[No. 9155.    Department Two.    December 20, 1910.]

H. J. BURNS, *Respondent,* v. BRADFORD-KENNEDY LUMBER COMPANY, *Appellant.*[1]

FRAUDS, STATUTE OF—PROMISE ON DEBT OF ANOTHER—ORIGINAL PROMISE. A foreign corporation is liable for the purchase price of machinery, as upon an original oral promise, and the transaction is not within the statute of frauds, where its agent told plaintiff he had a job for him, and a week later came to plaintiff and gave the measurements for a blow pipe system to be installed in the mill of another company, ordered the goods, and on plaintiff's objection that such company did not have good financial standing, directed plaintiff to send the bill to such company and "we will pay the bill," it appearing that the leading object of the defendant company in installing the system was to enable the mill to fill defendant's orders for lumber.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered May 7, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Poindexter & Moore* and *Richard G. Hutchinson,* for appellant.

*Barker & Barker* and *C. C. Upton,* for respondent.

DUNBAR, J.—The respondent is a resident of the city of Spokane, in the business of manufacturing blow pipes and attachments for sawmills in Spokane. The Dehlbom Lumber Company, at the time of the transaction out of which this suit grows, was engaged in the manufacture of lumber prod-

[1]Reported in 112 Pac. 359.

ucts in the state of Idaho. The appellant is a Nebraska corporation, having an office in the city of Spokane, engaged in buying and selling lumber, and one George P. Newmeyer was its agent. Newmeyer, according to his statement, went to respondent's factory and gave him the measurements for a blow pipe system to be installed in the Dehlbom mill, which it is conceded was of doubtful financial standing. According to the respondent's statement, Newmeyer met respondent in the city of Spokane and told him that he thought he would have a job for him. About a week later he went to respondent's place of business, and gave him the measurements for a blow pipe system to be installed in the Dehlbom mill. Respondent told Newmeyer that the Dehlbom company did not have good financial standing, and Newmeyer, without being requested by respondent, said, "Well, you send the statement on to them, and we will pay the bill." Newmeyer denies that he ever told respondent that appellant would ever pay the bill for the blow pipe system. The system was manufactured and installed in the lumber company's mill. The appellant refusing to pay for the same, this action was brought, and in answer to the complaint, the appellant denied that it had ordered the said system, or had agreed to pay for the same. The case was tried to the court without a jury, and judgment was rendered against the appellant in the sum of $348.64, with costs. From that judgment, this appeal is taken.

There is no controversy over the value of the goods furnished. The findings of fact were made by the lower court, all of which were excepted to by the appellant, the main and material one being that, on or about August 21, 1909, defendant, through its agent George P. Newmeyer, ordered of plaintiff a certain blow pipe system, to be shipped and installed in a certain sawmill at Copeland, Idaho, operated by the Dehlbom Lumber Company. Two questions are presented by the appeal in this case: (1) Was the promise of Newmeyer, if he did in fact promise, an original promise and valid and binding though oral, or was it a promise to answer for the

debt of a third person, which, to be valid, would have to be in writing; and (2) was the purchase of machinery within either the actual or apparent scope of Newmeyer's authority as agent of appellant.

We think there is no question but that the second query must be answered in the affirmative. As to the first, our code provides, § 5289, Rem. & Bal., that "every special promise to answer for the debt, default, or misdoings of another person" shall be void unless it is in writing. It is the contention of the appellant that the circumstances of this case bring it within the prohibition of the statute, and many cases are cited to sustain the general doctrine that, where one agrees to pay for goods that are furnished to another, or where one says to the merchant, "Let Mr. Blank have what goods he wants and I will pay for them, or I will see that they are paid for," such promise falls within the statute. But all of these cases, where the contract on the part of the avowing party embraces the expression, "we will see that the account is paid," or words to that effect, are easily distinguishable from the case at bar. In those cases the contract is generally made by one party, and the other party vouches for the payment of the bill. But in this case, if the testimony of the plaintiff is true—and we have no reason to think that the court erred in finding in effect that it was—there was but one party who dealt with the plaintiff in this transaction, viz., Newmeyer. It was he who, meeting the respondent prior to the transaction, told him that he would have a job for him. It was he who, a week later, went to his place of business and ordered the goods, and gave the measurements of the mill, and arranged for the shipping and installing of the system. Under such circumstances, defendant would have been liable as an original purchaser even without any express promise to pay. It is true, Newmeyer was ordering it sent to another party or company, and it is also true that, in connection with his promise to pay, he directed respondent to send the bill to the lumber company. But this might well have been for the

purpose of keeping their accounts straight with the lumber company, or even with the hope that the lumber company would pay the bill. These were matters between the defendant and the lumber company, with which the respondent had no concern. The testimony shows that the appellant had transactions with the lumber company in which the lumber company was to furnish lumber to the appellant, and that it became necessary for appellant's own benefit to have this system installed in the lumber company's mill. An excerpt from the testimony of the respondent is as follows:

"Q. You said that Mr. Newmeyer told you something about the Dehlbom people being slow or skeptical? A. It seems they had lost confidence in their credit or something. Q. That was in connection with installing the blow pipe system? A. Yes, sir; and other equipment they wanted around there. It was not altogether on this. Q. What further did he say, if anything, in regard to putting in this system at that time? A. He was to put it in; that they had to have that put in in order to get their lumber out. He said they had been monkeying along all spring up to this time and that they had not got it out; that their orders were piling in on them and they could not get their orders out on time without this being put in, and he took it into his own hands to have it put in."

So that it appears from the respondent's testimony, which we have indicated bears the impress of truth, that the appellant's agent, on his own initiative, proposed to get the respondent this job; that he went up to Idaho for the purpose of seeing about the installation of the system and of obtaining the measurements; that when he came back, he went to the respondent and gave him the measurements with specific instructions to have it taken up to Idaho and installed; that he asked respondent what the cost of the work and material would be; that the respondent told him that, if they had to stop to figure, it would delay the execution of the work some, and that the agent did not wish the delay and ordered them to proceed at once with the work, which was done.

There is probably no branch of the law that has furnished the courts with as many cases as the statute of frauds, and the distinctions drawn by the courts have frequently been exceedingly shadowy. The circumstances in each case are a little different from the circumstances in other cases, so that it is difficult to lay down a controlling rule, or to determine what state of facts constitutes a promise to answer for the debt of another. Of course, if the facts show that the promise is collateral, the statute is invaded if the promise is not in writing. Chief Justice Shaw, in *Nelson v. Boynton*, 3 Met. (Mass.) 396, 37 Am. Dec. 148, announces the rule as follows: In case one says to another, "Deliver goods to A. and I will pay you," it is binding, though by parol, because A., though he receives the goods, is never liable to pay for them. But if he says, "I will see you paid," or "I will pay if he does not," or uses equivalent words showing that the debt is in the first instance the debt of A., the undertaking is collateral and not valid unless in writing. There is also another rule which is well established, viz., that where the leading object of the promissor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute. As we interpret the testimony in this case, the obligation is binding on the appellant, and the judgment is therefore affirmed.

RUDKIN, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.