[No. 10784. Department One. April 1, 1913.]

HENRY DAVIES, *Respondent*, v. WILLIAM CAREY et al.,
*Appellants.*[1]

FRAUDS, STATUTE OF—ORAL PROMISE TO PAY DEBT OF ANOTHER—ORIGINAL UNDERTAKING—CONSIDERATION. Where the owner of timber sold the same to a logger, to be paid for as removed, and was interested in the logging operations to the extent that his profits depended thereon, his promise to a merchant, supplying the logger with goods for the camp, to pay the balance due on the account and also to pay for all merchandise thereafter furnished, in case credit was extended and goods supplied for the operations, is a direct and original undertaking on a sufficient consideration and not a promise to pay the debt of another; and hence is not within the statute of frauds.

[1]Reported in 130 Pac. 1137.

HUSBAND AND WIFE—COMMUNITY DEBTS—JUDGMENT—FORM. In an action against a husband and wife upon a community debt contracted by the husband alone, a judgment in form against both husband and wife, is erroneous, since it is enforceable against the wife as her separate debt, and should be against her as a member of the community only.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 14, 1912, upon findings in favor of the plaintiff, in an action on contract, after a trial to the court. Modified.

*Peterson & Macbride,* for appellants.

*Jas. W. Carr,* for respondent.

PARKER, J.—The plaintiff, a storekeeper at Port Orchard, in Kitsap county, seeks to recover from defendants the value of merchandise ·delivered by him to Harris Brothers, who were at the time engaged in logging operations in that county under a contract with the defendant William Carey. The plaintiff rests his right to recover from the defendants upon the promise of the defendant William Carey to pay for the merchandise so delivered. A trial before the court without a jury resulted in findings and judgment in favor of the plaintiff for the full amount claimed, from which the defendants have appealed.

In the early summer of 1910, appellant William Carey was engaged in logging, in Kitsap county, having acquired certain standing timber there which he was to pay for from time to time as he removed it from the land. In June of that year he entered into a contract with Harris Brothers, by which they were to take over his outfit and log this timber in his stead, and pay him therefor from time to time as the logs were removed and marketed. Respondent was aware of the fact that both Carey and Harris Brothers were interested in the logging of. this timber, but did not know of the real nature of the contract they had with each other relative thereto. The evidence tends to show that respondent had

good reason for believing, and did believe, that Harris Brothers were employed by Carey to remove the timber, though it appears that they actually had a contract for the purchase of the timber from Carey on such terms as to leave him a profit. It is, in any event, plain that Carey was interested in the success of Harris Brothers in removing and marketing the logs, and that his profits depended thereon.

Between July 14 and August 19, 1910, respondent sold and delivered to Harris Brothers merchandise consisting of the usual supplies and provision for carrying on logging operations, of the total value of $438.10. During this period Harris Brothers paid to respondent thereon $150, leaving a balance of $288.10 due on August 19. On August 20, appellant William Carey and respondent had a conversation at his store relative to this unpaid balance due him from Harris Brothers. Respondent's version of this conversation and what he then did as a result thereof is given in his testimony as follows:

"A. At that time I told Mr. Carey that I was a small concern, that the account of the camp was getting almost too large and that I had to have money to pay my bills, and he said to me that he was going to take over the camp and would pay the bills. Q. What else did he say, if anything? A. And I asked him if I should still continue to supply the camp and he told me yes, to let them have what goods that they wanted, and that he would not only pay for what went down but pay for what they had got. Q. What, if anything, did he say with reference to charging the account to him? A. He said, charge the account to him, sir, which I did. Q. About the balance due, what did he say about charging it? A. Charging the whole thing. I handle the McKaskey system, one account is brought right forward onto the other. Q. What did he say, if anything, about charging the balance that was due? A. He told me to charge balance to him, the whole account; that he would become responsible for the whole account. Q. You may state, Mr. Davies, whether at that time you made any memorandum of the agreement between you and Mr. Carey. A. I certainly did; I went right

in and called Mrs. Dilks' attention to the fact, made the notation on what I called my daily balance."

This testimony of respondent is corroborated by another disinterested witness who was present at the time, though it was denied by Carey. The slips upon which respondent noted his charges against and in favor of his customers from time to time, constituting his book of original entry, kept in due course of business, show that this balance was then charged by him thereon against appellant William Carey. Thereafter respondent continued to deliver goods to Harris Brothers at their request from time to time, and as delivered charged the goods to appellant William Carey until September 19, at which time there was due upon the account the total sum of $404.95, no payments having been made since August 20, the day of the conversation between respondent and appellant William Carey. About this time, appellant William Carey took possession of the camp and outfit which had been previously turned over by him to Harris Brothers, evidently for the reason that Harris Brothers had failed to carry on the logging operations as agreed under their contract.

It is first contended on behalf of appellant that the evidence does not warrant the finding of the trial court, to the effect that appellant William Carey promised to pay the balance due respondent from Harris Brothers, and also to pay for the goods thereafter to be furnished to Harris Brothers, as testified to by respondent. A careful reading of the entire evidence convinces us, however, that it clearly preponderates in support of the version of that conversation given by respondent in his testimony, which we think shows a direct original promise on the part of Carey to pay the previously incurred debt of Harris Brothers as well as the debt thereafter to be incurred in the furnishing of goods, as his own debt.

It is contended that the promise of appellant William Carey to respondent was in any event only a "promise to

answer for the debt, default, or misdoings of another," and therefore void and not enforceable because not evidenced in writing as required by our statute of frauds. Section 5289, Rem. & Bal. Code. We think this contention finds its answer in the fact that the promise was not collateral, but was a direct promise on the part of Carey to pay both the past debt incurred by Harris Brothers as well as the future debt to be incurred upon furnishing them goods, as his original debt. It was not a mere promise to pay if Harris Brothers failed to pay, but it was manifestly a direct promise on the part of Carey to assume and pay for all of the goods as his own debt. This being true, there is nothing wanting to render appellant William Carey liable thereon, unless it be a lack of sufficient consideration to support and render that promise binding in law. William Carey's interest in the logging operations and the fact that his prospective profits depended upon the logging operations being carried on, we think leave little to be argued upon the question of the sufficiency of the consideration moving to Carey, to support his promise as a legal liability on his part. From all the circumstances, it is clearly manifest that the primary purpose of Carey was to secure and promote his own interest. This, we think, was sufficient in law as a consideration, even though the result of his promise to respondent was to incidentally answer for a debt of Harris Brothers. *Burns v. Bradford-Kennedy Lum. Co.,* 61 Wash. 276, 112 Pac. 359; *Howell v. Harvey,* 65 W. Va. 310, 64 S. E. 249, 22 L. R. A. (N. S.) 1077, and note. See note in 15 L. R. A. (N. S.) 222; 20 Cyc. 163.

Appellants rely upon the early decision of this court in *McKenzie v. Puget Sound Nat. Bank,* 9 Wash. 442, 37 Pac. 668, 43 Am. St. 844. A careful reading of that decision, we think, will show that there was no consideration whatever moving to the promisor. It is apparent from the language of that decision that, had there been a consideration operating to the

advantage of the promisor, it would have been held sufficient to render the promise legally binding.

Appellants also rely upon our recent decision in *Goldie-Klenert Distributing Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60. That case, however, involved the construction of the language of the complaint, which was somewhat involved; the court concluding that the alleged promise was collateral, being a promise of indemnity only.

The judgment is:

"That the plaintiff have and recover of and from the defendants herein and each and every of them, to wit, William Carey and Jessie Carey, . . ."

It is contended in behalf of appellant Jessie Carey that the judgment is, in any event, erroneous in so far as it awards recovery against her individually, or otherwise than as a member of the community. We think it is quite plain from the record that the debt upon which the judgment rests is a community debt for which she is not liable beyond her interest in the community property. It was therefore error to enter the judgment in this form rendering her separate property liable therefor. *Anderson v. Burgoyne*, 60 Wash. 511, 111 Pac. 777; *White v. Ratliff*, 61 Wash. 383, 112 Pac. 502.

The judgment is reversed in so far as it awards recovery against appellant Jessie Carey otherwise than as a member of the community. The judgment is affirmed in so far as it awards recovery against appellant William Carey and the community. The superior court is directed to correct the judgment accordingly. Respondent is awarded his costs in this court against appellant William Carey and the community. Appellant Jessie Carey is awarded her costs in this court against respondent.

CROW, C. J., GOSE, CHADWICK, and MOUNT, JJ., concur.