[No. 12044.  Department Two.  April 14, 1915.]

G. E. LOVELL, *Appellant*, v. J. S. HAYE, *Respondent.*[1]

SALES—SUFFICIENCY OF EVIDENCE—PROMISE TO PAY. An original promise of defendant to pay for goods sold and delivered to another, his tenant, is sufficiently established where the evidence shows that the tenant was farming certain lands of defendant on an agreement to share the crops; that the tenant was indebted to a storekeeper for groceries and farm implements, and had been refused further credit; that the defendant paid what was due on the groceries, but refused to pay the indebtedness for the machinery, and testified that he said, "I have paid the account as I agreed, now it is up to you, what will you do," and the storekeeper said the tenant could have such further credit as he desired; while on the other hand, the testimony of the storekeeper was that defendant told him to let the tenant have "what he wanted and he would pay him dollar for dollar," and this testimony was corroborated by that of the tenant and by an employee of the storekeeper, and by the further fact that the tenant was already indebted to the amount of his own share in the crop, and it was to defendant's interest to see that he was supplied with goods necessary to carry on harvest operations, so that the defendant would be able to realize his half share in the crops.

FRAUDS, STATUTE OF—PROMISE TO PAY DEBT OF ANOTHER—ORIGINAL OR COLLATERAL PROMISE—EVIDENCE. A promise to pay the debt of another for goods sold is an original, and not a collateral one, where it was a direct promise to pay the debt "dollar for dollar," without qualification or reservation; and the fact that the goods were not charged to the promisor, but to the original debtor, would not in itself be sufficient to overcome a direct promise.

APPEAL—REVIEW—FINDINGS. Upon trials *de novo* on appeal, the findings of the lower court are not equivalent to the verdict of a jury and thus entitled to stand, if there is evidence to support them, but it is the duty of the supreme court not to follow them when against the weight of the evidence.

[1] Reported in 147 Pac. 632.

Appeal from a judgment of the superior court for Spo-
kane county, Sessions, J., entered December 23, 1913, upon
findings in favor of the defendant, in an action on contract,
tried to the court. Reversed.

*Zent, Powell & Redfield* and *Lovell & Davis,* for appellant.

*Danson, Williams & Danson* (*George D. Lantz,* of coun-
sel), for respondent.

Fullerton, J.—This is an action originally instituted
by the trustee in bankruptcy of one W. E. Soden, to recover
for certain goods, wares and merchandise alleged to have
been sold and delivered to one S. N. Gibson at the request
and on the credit of the respondent, J. S. Haye. Issue was
taken on the complaint and a trial had, resulting in findings
by the court to the effect that the respondent did not agree
to pay for the merchandise, but, on the contrary, that the
same were sold, delivered and charged to S. N. Gibson on
his own credit and responsibility. Judgment was entered
on the findings, and subsequent thereto, the trustee in bank-
ruptcy assigned his cause of action to G. E. Lovell, who
prosecutes this appeal.

Two principal questions are presented by the record, first
whether the respondent, Haye, agreed to pay for the goods
sold to Gibson, and second, if he did so promise, was his
promise original or collateral. There are certain undis-
puted facts in the record. During the year 1911, and down
to July 20 of the year 1912, W. E. Soden conducted a
general merchandise store at Benge, in Adams county, in
this state. S. N. Gibson was then the lessee of certain farm-
ing lands belonging to the respondent, J. S. Haye, which he
was farming for a share of the crops grown thereon. Gib-
son traded at Soden's store, buying largely upon credit. By
the early part of the summer of 1912, Gibson's account had
reached a considerable amount and Soden began pressing
him for payment. Gibson promised from time to time to
have the account taken care of by his landlord, Haye, but

neglecting so to do, Soden, about June 1, 1912, refused him further credit. On June 5, 1912, Gibson appeared at the store of Soden with the respondent, Haye, when a settlement of the existing account was had and an arrangement made whereby Gibson was allowed by Soden to continue purchasing goods. In this settlement it is conceded that Haye paid to Soden that part of Gibson's account which was incurred for groceries, but refused to pay for certain farm machinery and implements purchased by Gibson and for which he had given notes that had not then matured, and that after this settlement the question of further sales to Gibson was taken up between the parties.

On the disputed questions, Soden testified that the settlement of the account was made between himself and Haye at a place in the store called the balcony, outside of the presence of Gibson; that thereafter Haye and himself went down into the main part of the store, when Haye called Gibson to a desk therein and asked him if he desired to trade further with Soden, saying that he did not have to do so, as he, Haye, would just as soon send him such stuff as he needed down from Spokane as to purchase it of Soden. That Gibson replied by saying that he had always been treated right at Soden's store and would as soon trade there as anywhere; that Haye thereupon turned to the witness and told him to let Gibson "have what he wanted and he would pay him dollar for dollar." Haye denies making in any form a promise to pay for any further goods sold to Gibson. While he admits making the settlement in the manner and at the place stated by Soden, he testified that, after they came down into the main store room, he "called Gibson and said, 'Now, I have paid the account as I agreed, and now its up to you; what will you do?'" and that Soden then spoke up, saying that Gibson could have such further credit as he desired.

Soden's version of the transaction is corroborated by an employee by the name of Hooper, not only as to the direct nature of the promise, but also as to the circumstances under

which it was made. He is also corroborated as to the promise by Gibson, although Gibson purported to give the substance of the conversation rather than the particular language used, and some of his answers indicate that the promise was collateral rather than original. The circumstantial evidence also, we think, supports Soden rather than Haye. As we have said, Gibson was a tenant on Haye's farm land, and was obligated to harvest the crops growing thereon. At the time of this transaction, the harvest season was just beginning, and it was known to all of the parties that Gibson would need various articles of merchandise if he was to carry on successfully the work of harvesting. It was known to Soden as well as Haye that Gibson was not entitled to further credit from a merchant's viewpoint, as he had then assigned to Haye as security for advancements theretofore made, and certain others to be made to him by Haye, all his interest in the crops growing on the leased land, and that his residuary interest therein was of doubtful value. Soden, therefore, had no interest to promote in selling goods to Gibson; on the contrary, he knew that if he did so on Gibson's own credit it must result in an almost certain loss to him. On the other hand, Haye had an interest in seeing that Gibson was supplied with such goods, for otherwise he would not be able to carry on the harvest operations. Under these circumstances we think it much more probable that Haye made the promise to pay for the goods than that Soden sold them on the credit of Gibson.

But it is said that the promise is collateral rather than original, and that no recovery can be had because of the statute of frauds. We are clear, however, that the promise was original rather than collateral under the most exacting of the rules. The version given by the witnesses who repeated the language in which the promise was made, is that it was a direct promise to pay "dollar for dollar," without condition or reservation, and this, as we have heretofore held, is the distinguishing line between an original and a collateral

promise. *Goldie-Klenert Distributing Co. v. Bothwell,* 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913 D. 849; *Davies v. Carey,* 72 Wash. 537, 130 Pac. 1137; *Wells & Morris v. Brown,* 67 Wash. 351, 121 Pac. 828, Ann. Cas. 1913 D. 317.

Again, it is said there can be no recovery because the goods were not charged to Haye on the seller's books, but were, on the contrary, charged to Gibson. There are cases which maintain this doctrine, but the better rule and the weight of authority is the other way. No doubt the manner in which the goods are charged on the books of the seller is a circumstance to be considered in determining to whom credit is given, but it is not conclusive. *Mackey v. Smith,* 21 Ore. 598, 28 Pac. 974; *Ridgeway v. Corporation Liquidating Co.,* 71 N. J. L. 676, 62 Atl. 116; *Runkle & Fouse v. Kettering,* 127 Iowa 6, 102 N. W. 142; *Cruse v. Foster & Estes,* 76 Ga. 723; *Kesler v. Cheadle,* 12 Okl. 489, 72 Pac. 367. We are not convinced that the circumstance in this instance is sufficient to overcome the direct evidence.

The respondent further contends that the finding of the lower court on a question of fact is equivalent to the verdict of a jury, and will not be reversed in this court unless the finding is without evidence in its support. We so held in *Second National Bank v. Hatch,* 24 Wash. 421, 64 Pac. 727, but the case was contrary to the provisions of the statute, and was directly overruled in the case of *In re Garfinkle,* 37 Wash. 650, 80 Pac. 188, where it is said that the question had been inadvertently decided. In the late cases of *Johns v. Arizona Fire Ins. Co.,* 76 Wash. 349, 136 Pac. 120, 49 L. R. A. (N. S.) 101; *Baker v. Yakima Valley Canal Co.,* 77 Wash. 70, 137 Pac. 342; and *Johnsen v. Johnsen,* 78 Wash. 423, 139 Pac. 789, 1200, we have re-affirmed the doctrine of the case of *In re Garfinkle,* and sought to make it clear that this court tries *de novo* all actions in equity and all actions at law where the case is tried in the court below without a jury. Unquestionably the judgment of the trial court on the evidence is entitled to

weight, but if we conclude that the weight of the evidence is against the findings, "it becomes our duty to reflect our conclusion in the judgment." *Johnsen v. Johnsen, supra.*

. The appellant admits that the claim sued upon is too large by the sum of $95. We think it too large also by the further sum of $135, making a total of $230. These sums were for items sold by Soden to Gibson on Gibson's individual credit, prior to the time Haye entered into the transaction, and in no manner can he be responsible for them.

The judgment is reversed, and remanded with instructions to enter a judgment in favor of the appellant and against the respondent for the sum demanded in the complaint, less $230.

CROW, MOUNT, MAIN, and ELLIS, JJ., concur.