[No. 18791.  Department One.  February 19, 1925.]

JOHN DYBDAHL, *Respondent,* v. CONTINENTAL LUMBER COMPANY, *Appellant.*[1]

LOGS AND LOGGING (28)—NOTICE OF CLAIM—PLACE OF FILING. Under Rem. Comp. Stat., § 1168, requiring that a logger's lien be filed and enforced in the county where the work is done, a lien filed in another county to which the logs had been removed is invalid.

SAME (48)—COSTS AND ATTORNEY'S FEES. In an action by a logger to foreclose a lien, in which the lien fails, judgment for the value of his services cannot include an attorney's fee and costs of filing the lien.

FRAUDS, STATUTE OF (1, 31)—PROMISE TO PAY DEBT OF ANOTHER—MEMORANDUM—SUFFICIENCY. Under the rule that a written promise to pay the debt of another must be so complete in itself as to require no resort to parol evidence, a letter enclosing $100 upon an account and stating that in two weeks the proceeds of logs to be cut will give sufficient funds to pay the creditor's claim, is insufficient to take it out of the statute of frauds, in the absence of

[1]Reported in 233 Pac. 10.

an independent consideration making it an original promise of the writer.

SAME (4, 59)—PROMISE TO PAY DEBT OF ANOTHER — ORIGINAL PROMISE. A mill company's oral promise to pay a logger's lien upon logs is based upon a sufficient consideration to make it an original promise, taking it out of the statute of frauds, where it had purchased the logs, which were at the mill, a suit had been started to foreclose the lien, and the mill's operations would be greatly hampered but for the agreement, which was to hold up the suit and pay the bill; and it is immaterial that the lien in fact proved to be unenforcible.

Appeal from a judgment of the superior court for King county, Brinker, J., entered April 24, 1924, in favor of the plaintiff, in an action to foreclose a logger's lien, tried to the court. Reversed.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for appellant.

*Vince H. Faben,* for respondent.

BRIDGES, J.—The complaint alleged that the defendant had employed the plaintiff to haul certain logs from the woods in Jefferson county and put them into the waters of Hoods canal, for which service he was to be paid a certain compensation; that, not having been paid, he filed a lien on the logs, which at that time had been transferred to the defendant's sawmill located in Seattle, in King county. Personal judgment and foreclosure of the lien were sought. The answer is a denial of every allegation in the complaint except that the logs upon which the plaintiff had worked had been conveyed to its mill. There was a personal judgment against the defendant for $600, $75 attorney's fee, and $12.40 for preparing and filing the lien, making a total of $687.40, and a decree foreclosing the logger's lien. It was also ordered that certain moneys which the defendant had paid into court, amounting to $490, should

be applied to the payment and satisfaction of the judgment.

We find the facts to be these: One Foraker had felled certain alder trees in Jefferson county and he employed the respondent to haul these logs and put them in the waters of Hoods canal. The respondent did this work and was to receive a certain compensation therefor. Foraker sold the logs to the appellant and delivered them at its mill boom in Seattle. Respondent ceased the performance of his work August 8, 1923, and filed his lien twenty days later. He commenced his suit on the same day that the lien was filed. At that time a considerable portion of the logs were still in existence in appellant's mill pond, the remainder having previously been cut into lumber. Shortly after the suit was brought, there was a conference between the manager of the appellant and the respondent. The substance of this conversation was that the appellant could not at that time pay the amount of the lien because of lack of ready funds; that it desired to ship out the carload of lumber which it then had about ready for shipment and wished to cut the rest of the logs into lumber and dispose of it; that appellant's operations would be greatly handicapped if respondent continued to press his suit. The result of the conference was that respondent would for the present allow matters to stand in *statu quo* and not press his suit, and the appellant would pay respondent's bill.

In so far as the judgment rests upon the lien sought to be foreclosed, it must be reversed. The work on the logs was done in Jefferson county and the lien was filed in King county. The statute provides that the lien must be filed and enforced in the county where the work is done. Section 1168, Rem. Comp. Stat. [P. C. § 9685]. There being no lien, there could be no foreclosure or attorney's fees or outlay on account of the invalid lien.

After the conference above mentioned between the parties hereto, the attorneys for appellant wrote respondent, or his attorneys, the following letter:

"Dear Sir: Enclosed you will find our check in the sum of $100 payable to yourself. This is to apply on the indebtedness of the Continental Lumber Company to your client Mr. Dybdahl.

"This check is not as much as I expected it would be, but Mr. Casey explains that they have orders for two more cars and the logs on hand to fill the order and that they will be able to cut the lumber and fill the orders within the next two weeks, at which time there will be sufficient funds available to pay your claim. The money which he is holding out at this time is for the wage bill and also he has to meet other claims similar to yours which are pressing at this time.

"Truly yours,
"Edward R. Taylor."

It is claimed that this letter is a sufficient writing to take the case out of the statute of frauds requiring that an agreement to pay the debt of another must be in writing, and on this basis it is claimed the personal judgment may stand. We are satisfied that this writing is wholly insufficient to take the case out of the statute of frauds. It nowhere states the amount of the indebtedness, nor by it does the appellant agree to make any payment. A valid promise to pay the debt of another must not only be in writing and duly signed by some person duly authorized, but it must show the amount of the debt and must agree to pay it.

In *Coleman v. St. Paul & Tacoma Lumber Co.*, 110 Wash. 259, 188 Pac. 532, speaking of this statute, we said:

"Under this statute, we have held that the writing, when alone relied on to relieve from the bar of the statute, must in itself contain all the terms of the contract. While we have said that the writing need not be formal and may contain implied conditions and may

use trade terms of abbreviations requiring explanation, without subjecting it to the fault of incompleteness, yet it must be so far complete in itself, after effect is given to the implied conditions and the trade terms and abbreviations are explained, as to show the bargain made.''

In *Cushing v. Monarch Timber Co.,* 75 Wash. 678, 135 Pac. 660, we said this:

''By an unbroken line of decisions we have held that, to meet this statute, the writing evidencing the agreement must be so complete in itself as to make a resort to parol evidence to establish any material element of the agreement unnecessary.''

The respondent must be denied any relief in this action unless the testimony is sufficient to show an oral agreement on the part of the appellant to make Foraker's debt to the respondent its own. It has sometimes been stated that if the promise to pay the debt of another is based upon some consideration, however small, running to the promisor, it will amount to an original promise, thus taking it out of the statute. But as has been said by other courts, this rule is wrong and would have the effect of almost entirely circumventing the statute, because every contract must be supported by a consideration, otherwise it is unenforcible. *Maule v. Bucknell,* 50 Pa. St. 39.

Many of the courts hold that, where the consideration received by the promisor is of special benefit to him, his promise will be considered as an original one and not one to pay the debt of another. 27 C. J. 145. Other courts have held the proper rule to be that, whenever the main purpose and object of the promisor is not to answer for the debt of another but to subserve some interest of his own, his promise is not within the statute, although it may in form be a promise to pay the debt of another. *Frohardt Bros. v. Duff,* 156 Iowa 144, 135 N. W. 609, 40 L. R. A. (N. S.) 242; 8 A. L. R.

1195 and note. It is clear that the benefit to the promisor must be something more than remote, indirect or meagre. It must be substantial, direct and personal. There must be a point up to which the promise is to pay the debt of another and consequently within the statute, but beyond which it becomes an assumption by the promisor of the debt of another—in other words, the debt of the promisor—and consequently not within the statute. Whether a particular promise goes beyond that point depends entirely on the extent of the proof in the particular case. May not the rule be stated thus: If the court be satisfied that the personal benefit moving to the promisor be of such a personal, direct and substantial character as to fairly justify and naturally lead the promisor to make the debt his own, then the statute does not apply, otherwise it will?

It is plain to us that the appellant's promise comes within any or all of these rules as to what constitutes an original promise. It had bought these logs, it was pressed for money, it had made arrangements for the sale of the lumber, it was desirous of proceeding with the orders on hand. The enforcement of the suit stood seriously in its way. If the respondent would presently forego his suit great benefit would flow to it. In these facts there is amply sufficient to justify it in making the debt its own, and we feel certain that this is what was intended to be done and what was done. All of our decisions strongly support this conclusion. A part of them are: *McKenzie v. Puget Sound National Bank,* 9 Wash. 442, 37 Pac. 668, 43 Am. St. 844; *Gay v. Schaefer,* 52 Wash. 269, 100 Pac. 334; *Burns v. Bradford-Kennedy Lumber Co.,* 61 Wash. 276, 112 Pac. 359; *Wells & Morris v. Brown,* 67 Wash. 351, 121 Pac. 828, Ann. Cas. 1913D 317; *Davis v. Carey,* 72 Wash. 537, 130 Pac. 1137; *Washington Printing Co. v. Osner,* 99 Wash. 537, 169 Pac. 988; *Lake Union Brick & Fire-*

*proofing .Co. v. MacWhinnie,* 120 Wash. 650, 207 Pac.
1060.   See, also, *Frohardt Bros. v. Duff, supra,* and
note; 27 C. J. 145 *et seq.*; 25 R. C. L. 493 *et seq.*

The fact that we have declared respondent's lien to
be unenforcible cannot change the obligation assumed
by the appellant.   The testimony shows that, at the
time it agreed to pay this debt, it assumed that the lien
was binding.   In any event, it was not void until the
court declared it so; and valid or void, it stood in ap-
pellant's way.   The attempt to enforce it was danger-
ous to its interest.   *Wells & Morris v. Brown, supra.*

There is some testimony tending to show that the
respondent at one time instituted proceedings for the
appointment of a receiver over the property of the ap-
pellant, and that the latter, in order to avoid that con-
tingency, agreed to pay certain sums into the register
of the court to be applied upon any judgment that re-
spondent might obtain.   The judgment entered by the
trial court found these facts to exist and applied the
amount of such payment to the judgment.   We see no
objections to this.

The judgment is reversed and the cause remanded.
On the going down of the remittitur let the trial court
set aside its judgment and make another awarding to
respondent a personal judgment against appellant for
the amount found to be owing, but not including any
attorney's fees or expenses in preparing and filing the
lien.

TOLMAN, C. J., MAIN, and PARKER, JJ., concur.