[No. 18994. Department One. April 13, 1925.]

## SPERRY FLOUR COMPANY, *Respondent,* v. DANIEL KREHBEIL, *Appellant.*[1]

FRAUDS, STATUTE OF (4)—PROMISE TO PAY DEBT OF ANOTHER—
ORIGINAL OR COLLATERAL PROMISE—EVIDENCE. There was a direct
promise to pay for goods, delivered to another and charged to de-
fendant (and not a collateral one to pay the debt of another within
the statute of frauds, Rem. Comp. Stat., § 5825), where defendant
directed plaintiff to furnish supplies to such person and charge the
same to defendant, stating that he was financing work requiring
the supplies, and where it appears that ·defendant repeatedly in-
quired as to the state of the account and made payments thereon
from time to time.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered April 29, 1924,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Affirmed.

*L. H. Brown* and *C. H. Brittenham,* for appellant.

*Danson, Lowe & Danson,* for respondent.

PARKER, J.—The plaintiff, Sperry Flour Company,
as assignee of Portland Flouring Mills Company, com-
menced this action in the superior court for Spokane
county seeking recovery from the defendant, Krehbeil,
of a balance claimed to be due for goods sold by the
Portland company to Krehbeil. A trial upon the mer-
its before the court, sitting without a jury, resulted in
findings and judgment awarding to the Sperry com-
pany recovery in the sum of $211.68, from which
Krehbeil has appealed to this court.

The contentions here made in behalf of Krehbeil
are that he did not purchase the goods; that he did not
promise to pay for the goods; and that whatever he
may have said which might be construed as a promise

[1]Reported in 234 Pac. 1028.

to pay for the goods was, in any event, nothing more than an oral promise to answer for the debt of another, and therefore not binding upon him because not evidenced in writing as required by § 5825, Rem. Comp. Stat. [P. C. § 7745]. No contention is here made that the judgment is erroneous as to amount, if the Sperry company is entitled to any judgment as against Krehbeil.

The trial court made general findings only, in substance that Krehbeil purchased direct from the Portland company between March 2, 1921, and June 12, 1922, goods of the value of $437.70, making payments therefor on account, leaving an unpaid balance which, together with interest, amounted to $211.68, for which amount the judgment was rendered. The facts touching the contentions above noticed may be summarized somewhat more in detail as follows: Alex Ruff had, for sometime prior to 1921, been a tenant of Krehbeil, and had on numerous occasions been furnished goods by the Portland company on Krehbeil's account; that is, the goods being charged directly to Krehbeil as authorized by him, for which he had from time to time made payment. About March 1, 1921, not long after the final settlement of that account and the termination of that relationship between Krehbeil and Ruff, Krehbeil and the manager of the Portland company had a conversation with reference to furnishing Ruff goods, related by the manager in his testimony as follows:

"Q. Now, tell the court the substance of it. A. Mr. Krehbeil said that Mr. Ruff was doing some work for him and he was to finance him for what feed he would require in doing the work, and I let him have it and charged it to his account. Q. Whose account? A. Mr. Krehbeil. Q. You mean Krehbeil was to finance Ruff? A. Krehbeil was to finance Ruff, and I let Mr. Ruff have what he wanted and charged it to Mr. Krehbeil. . . Q. Now then, what did you tell him?

A. I told him that we would furnish the stuff to Mr. Ruff on Mr. Krehbeil's account. Q. And what did he say? A. That was satisfactory. . . Q. Well, you opened an account? A. Opened an account and charged the stuff to Dan Krehbeil and delivered it to Alex Ruff.''

While this version of that conversation by the manager is not very happily worded, he manifestly intends to convey the thought that Krehbeil directed the furnishing of the goods to Ruff and the charging of the purchase price thereof to him, Krehbeil. Goods of the nature contemplated were accordingly furnished Ruff during the period from March 2, 1921, to June 12, 1922. Repeatedly during this period in which there was some seventeen different furnishings of items, Krehbeil inquired at the Portland company's office of the condition of the account and was kept fully advised with reference thereto, and at all times sanctioned the furnishing of the items to Ruff as charged. On December 17, 1921, Krehbeil paid upon the account $200, and on June 10, 1922, he paid upon the account $47. The evidence is not free from conflict, but we think the foregoing is a fair summary of the controlling facts as the trial court was fully warranted in viewing them, and as it evidently did view them.

It seems to us that these facts call for the conclusion that Krehbeil's direction to the Portland company for the furnishing of the goods to Ruff and the charging of the purchase price thereof to himself constituted a direct and not a collateral promise to pay for them as being purchased directly by himself, thus making his oral promise not subject to be avoided under the statute of frauds. It was not, we think, a promise to answer for the debt of another, but a direct promise to pay his own obligation. Not only, as we view the evidence, does it fairly show a direct promise made in

the conversation between Krehbeil and the manager of the Portland company, but such view of that conversation acquires strong additional support viewed in the light of the circumstances of the former relations of the parties, repeated inquiries made by Krehbeil to keep himself advised as to the condition of the account, his repeated approval of the furnishing of the items, his making payments thereon, and his apparent interest in having the goods furnished to Ruff for the carrying on of work which Ruff was doing for him. In 25 R. C. L. 489, we note the following very pertinent observations relating generally to the question of when a promise of the nature here in question is direct or collateral:

"In ascertaining to whom credit was extended, the intention of the parties must govern. This intention should be ascertained from the words used in making the promise, the situation of the parties, and all the circumstances surrounding the transaction. The real character of the promise does not depend altogether on the form of expression, but largely on the situation of the parties; and the question is always what the parties actually understood by the language—whether they understood it to be a collateral or a direct promise."

The decisions of this court in *Burns v. Bradford-Kennedy Lumber Co.*, 61 Wash. 276, 112 Pac. 359, *Davies v. Carey*, 72 Wash. 537, 130 Pac. 1137, and *Lovell v. Haye*, 85 Wash. 109, 147 Pac. 632, lend strong support to our conclusion here reached.

The judgment is affirmed.

TOLMAN, C. J., BRIDGES, MAIN, and ASKREN, JJ., concur.