[No. 34635. Department Two. February 5, 1959.]

YAKIMA CEMENT PRODUCTS Co., *Respondent and Cross-appellant,* v. C. F. WILLIAMSON *et al., Appellants.*[1]

*Hawkins & Loy,* for appellants.

*D. V. Morthland* and *Norman R. Nashem, Jr.* (of *Nashem & Dobbs*), for respondent and cross-appellant.

FOSTER, J.—Respondent sued the appellants, Williamson and wife,[2] on three causes of action for the installation of concrete irrigation pipe on two separate parcels of land in the Columbia Basin project. The first two causes of action

[1]Reported in 335 P. (2d) 1.

were upon promissory notes signed alone by the defendant Nolan and wife, who defaulted and are not parties to this appeal, and it is alleged that appellant Williamson promised to sign the same before the work was commenced but refused when the notes were presented to him. The court denied recovery against Williamson on the two notes from which the respondent cross-appeals. The third cause of action is in the alternative in the common counts for work and labor and material furnished, embracing the same items covered by the two notes, for which judgment was entered against appellant Williamson in the sum of $6,980.55, plus interest and costs, from which he appeals.

The primary question is the liability of the appellant Williamson for concrete irrigation pipe and work and labor in its installation. The complaint is in the usual form of common counts, or implied assumpsit. The appellant contends that this is a promise within the second specification of RCW 19.36.010, providing that every promise to answer for the debt, default, or misdoing of another person shall be void unless in writing and signed by the party to be charged. Respondent, on the other hand, contends and the court found that it was an original obligation on the part of the appellant Williamson and not within the statute of frauds.

■ Two preliminary questions are presented. On its books, respondent charged the installation to Nolan. This, however, was at appellant Williamson's request. He did not desire to be known as interested in developing and farming the property in question. He was subsequently charged with violation of the Columbia Basin project act (16 U. S. C. A., § 835 *et seq.*) respecting ownership of some farming units. The fact that the work was charged to Nolan on respondent's books is not of controlling importance under such circumstances.

In *Lovell v. Haye*, 85 Wash. 109, 147 Pac. 632, we said:

". . . No doubt the manner in which the goods are charged on the books of the seller is a circumstance to be

²C. F. Williamson was the actor, and his wife was joined only because of the marital relationship. Therefore, the husband alone is referred to in this opinion.

considered in determining to whom credit is given, but it is not conclusive. . . ."

Here the importance of the book charge is relatively insignificant because it was made at appellant's request. Moreover, Nolan was without money and had nothing to do with ordering the installation of the pipe, which was exclusively the work of Williamson. On the other hand, the latter exhibited to respondent a financial statement showing a net worth in excess of three hundred thousand dollars. Respondent's agents testified positively that the reliance was exclusively upon Williamson's credit.

■ On cross-examination, a witness for the respondent, who was an employee of the United States, was asked a question upon a matter which had already been held to be immaterial. He said he could not answer until he had the permission of his superior. Whereupon, appellant moved to strike the entire testimony of the witness which the court declined to do. We cannot say this was error.

Appellant relies upon *Rutger v. Walken*, 19 Wn. (2d) 681, 143 P. (2d) 866, and *Thomas v. Dower*, 162 Wash. 54, 297 Pac. 1094.

The answer to the argument is threefold: First, in the two cases cited, the witness was a party; second, the question concerned a material matter; and third, there was a point-blank refusal to answer.

Here, on the other hand, the witness was not a party and had no interest in the controversy. The matter was entirely collateral and immaterial. The witness did not refuse to answer but said that he first must have his superior's approval.

The trial court did not abuse its discretion in refusing to strike the testimony.

Irrigation pipe was installed on a tract of land in the Columbia Basin project. One Hart testified that, prior to the occurrences in question, Williamson came to him and told him of the land in question and that he could buy it cheaply. Hart had no dealings with the then owner of the property, and the appellant Williamson caused the property

to be conveyed to Hart. The purchase price was paid entirely by Williamson, and no part of it was paid by Hart. Hart never farmed the property, and the only connection he had with it thereafter was to execute a mortgage to Williamson for approximately three thousand dollars, which mortgage, however, was never recorded. During Hart's ownership, some improvements were placed upon the property by Williamson. Thereafter, Williamson requested Hart to convey his interest in the property to the defaulted defendant Nolan. Hart testified that Williamson came to him and said that he had a friend, referring to Nolan, who lived in Oregon and who had a little equipment but no money, and that he would like to set Nolan up in farming this tract. Accordingly, Hart conveyed to Nolan, the consideration recited in the deed as being $1,592.20. All of the negotiations respecting the transfer of Hart's naked legal title to Nolan were conducted exclusively by Williamson.

Although there is no finding upon this aspect of the matter, the court declared in its memorandum opinion that the deed was executed in blank and left with appellant's attorney, and that Nolan's name was not inserted until the middle of the following year. The court likewise stated in its memorandum opinion, although there is no finding, that the deed from Hart to Nolan was not recorded until July 29, 1954, at which time all of the pipe had been installed. The court found that the appellant Williamson alone conducted the negotiations with the respondent for the purchase and installation of the irrigation pipe.

The evidence shows that the respondent relied exclusively upon the credit of Williamson, who exhibited to it, at its request, a financial statement showing a net worth in excess of three hundred thousand dollars. The court found that the pipe was furnished and installed at the special instance and request of Williamson, and that it was done for and on behalf of both Williamson and Nolan. It is undisputed that as soon as Nolan acquired title, he executed the mortgage to Williamson on the real property in the sum of fifteen thousand dollars.

■ The question is whether the obligation of William-son to pay for the pipe is a direct and primary obligation or whether it is an obligation to pay the debt of Nolan. We need not resolve that dispute because in *Burns v. Bradford-Kennedy Lbr. Co.*, 61 Wash. 276, 112 Pac. 359, such an obligation was held not to be within the statute of frauds because "where the leading object of the promissor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute." That was reaffirmed in *Guth v. First Nat. Bank*, 137 Wash. 280, 242 Pac. 42.

It is true that appellant Williamson denied that he ordered the goods and denied that he promised to sign the promissory notes covering the cost of the improvements. There was substantial evidence, however, to the contrary, which the court believed and, consequently, found, that the improvements were made at the special instance and request of the appellant Williamson. This is an original promise and not within the statute of frauds. It is beyond controversy that the value of the appellant's mortgage security for the payment of the fifteen thousand dollars was very materially enhanced by the installation of the irrigation facilities by the appellant. In this view of the controversy, it is unnecessary to resolve the dispute between the parties as to whether or not Williamson and Nolan were joint adventurers.

■ Upon the cross-appeal, the evidence is that Williamson ordered the work done and promised to cosign the notes with Nolan. Thereafter, he refused to sign them. This promise is clearly unenforcible under the statute of frauds. RCW 19.36.010. Williston declares:

". . . Therefore a promise to a creditor to sign negotiable paper for the accommodation of his debtor either as an indorser, maker, or acceptor, must be in writing. . . ." 2 Williston on Contracts (Rev. ed.), 1325, § 457.

The judgment denying liability on the first two causes of action brought here by the cross-appeal of the plaintiff. Yakima Cement Products Company, is, therefore, affirmed.

The judgment against appellant Williamson on the third cause of action is, likewise, affirmed.

WEAVER, C. J., HILL, DONWORTH, and ROSELLINI, JJ., concur.