[No. 5335-1-III.   Division Three.   March 8, 1984.]

MORRISON–KNUDSEN COMPANY, INC., *Appellant,* v. HITE CRANE & RIGGING, INC., *Respondent.*

*Eric K. Nayes* and *Neff, Nayes & Witherspoon,* for appellant.

*F. Douglas Tuffley* and *Burns & Ricketts,* for respondent.

THOMPSON, J.—Morrison–Knudsen Co., Inc. (M–K) appeals a judgment in favor of Hite Crane & Rigging, Inc. (Hite) on a debt owed by United Pre–Cast Concrete Co. (United) because of M–K's oral promise to Hite to pay that debt. Hite cross–appeals the trial court's adverse ruling against its chattel lien claim and request for attorney's fees and costs.

In February 1979, Deaconess Hospital hired M–K as general contractor for a construction project. United was awarded the fabrication contract for the architectural pre-cast concrete panels. United was owned by another corporation which, by summer of 1980, was wholly owned by Don Baker. Inland Tile Co. (Inland), also owned by Baker, was awarded the subcontract to transport the panels from the United yard to Deaconess Hospital and to erect the panels on the site. Inland contracted with Hite to supply truck and crane services. Inland agreed to pay Hite weekly.

United also contracted with Hite to perform crane services at the fabrication site. Hite began work in October 1979. United's financial difficulties surfaced in January 1980. At that time United was in arrears $14,534.54 on payments owed to Hite. Baker and Hite informed M–K that Hite would not proceed with further work for United until it received some payment. M–K issued a joint payee check to Hite and United for part of the debt and Hite continued to work. This happened again in February and March of 1980. In mid–May, M–K paid another $5,000, to be matched by United. But United's payment was not received until May 29. Because Hite was disturbed by the large outstanding balance and concerned by the time it had taken United to pay its $5,000, Hite told M–K it would no longer provide services for either United or Inland. Based upon assurances by John LeMaster, M–K project supervisor, that it would be paid, Hite continued to work and billed current United charges through Inland. There was never any payment of the past due balance.

In July 1980, since M–K was concerned the IRS would lock up the United yard, they asked Hite to remove all finished panels from United's yard. Most were stored at Deaconess, but the last 29 were taken to Hite's place of business.

During Hite's last week of work in August 1980, LeMaster informed Hite M–K would no longer guarantee the debt. Demand for payment failed. In October 1980, Hite filed a chattel lien on the panels in its possession. A few days later, M–K filed suit to enjoin Hite's retention of the panels. M–K was allowed to take possession of the panels after posting a bond. Then Hite answered and counterclaimed for, among other things, recovery of the amount due from United and foreclosure of its chattel lien.

United filed for bankruptcy in April 1981. A bankruptcy stay was lifted to allow any judgment entered against United to be satisfied by the M–K bond.

The trial court dismissed several of the claims but awarded Hite judgment for $13,528.89 plus interest. This

award was entered against United and M–K separately, subject to a single recovery. The court denied attorney's fees to all parties. M–K appeals and Hite cross–appeals. We affirm.

■ The first issue is whether M–K's oral promise to pay United's past due debt to Hite is void and unenforceable under the statute of frauds, RCW 19.36.010, which provides:

> Contracts, etc., void unless in writing. In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (2) Every special promise to answer for the debt, default, or misdoings of another person; . . .

M–K's promise was found by the trial court to be an oral promise to answer for the debt of another—United. At first blush the case appears to fall within the statute. However, in determining whether a promise falls within the statute, our courts distinguish between collateral and original promises. If the promise was collateral, it is within the statute of frauds; if original, the statute does not apply. *Stowell Lumber Corp. v. Wyman,* 19 Wn.2d 487, 143 P.2d 457 (1943). A promise is considered original when the promisor receives some consideration or benefit from the promise. *McKay v. Northern Bank & Trust Co.,* 69 Wash. 186, 124 P. 372 (1912). Detriment to the promisee is not considered adequate. *Lloyd Co. v. Wyman,* 16 Wn.2d 621, 134 P.2d 459 (1943). Some cases appear to refer to this as the leading or primary purpose doctrine.

> However, this court has recognized and followed the very widely accepted doctrine that, where the leading purpose of the promisor is, not to aid the third person in getting credit, but, to secure a benefit for himself, he will be considered a debtor himself, rather than a surety and the statute will not apply.

*R.H. Freitag Mfg. Co. v. Boeing Airplane Co.,* 55 Wn.2d

334, 342, 347 P.2d 1074 (1959). If the leading object is to benefit the promisor, it does not matter if the effect of the promise is to pay the debt of another. *Burns v. Bradford–Kennedy Lumber Co.,* 61 Wash. 276, 280, 112 P. 359 (1910). Therefore, the fact the trial court found M–K agreed to assure the balance due to Hite from United is not determinative.

For the most part, the cases follow three basic fact patterns. First are the type in which A contracts with B to deliver goods or services to C. *See Burns v. Bradford–Kennedy Lumber Co., supra; Stowell Lumber Corp. v. Wyman, supra; Yakima Cement Prods. Co. v. Williamson,* 53 Wn.2d 532, 335 P.2d 1 (1959). A, as contracting party, cannot successfully argue it was only a contract to pay C's debt.

The second type are those in which C tries to contract with B for delivery of goods or services, B balks because of C's questionable financial condition and A promises to guarantee C's debt. In these cases, A's promise will come within the statute of frauds unless the leading purpose for A's promise is some benefit to A. *Compare Lloyd Co. v. Wyman, supra* (mere guaranty no benefit to promisor) *with R.H. Freitag Mfg. Co. v. Boeing Airplane Co., supra* (promisor obtains technical and expeditious construction of needed parts) *and South Sound Nat'l Bank v. Meek,* 14 Wn. App. 577, 544 P.2d 25 (1975) (possibility stockholders obtain beneficial loans to corporation).

The third type of case is similar to the situation here. C contracts with B for goods or services. B performs. C becomes financially embarrassed or in arrears, and A promises to pay C's debt to B. A's promise falls within the statute of frauds unless A received some benefit.

The cases differ on what is sufficient benefit to A. Early cases required a substantial benefit. In *McKenzie v. Puget Sound Nat'l Bank,* 9 Wash. 442, 37 P. 668 (1894), the court held a promise to forbear enforcement of a debt was not sufficient benefit. Other cases have been more generous. In *Fairview Lumber Co. v. Makos,* 44 Wn.2d 131, 265 P.2d 837

(1954), a house builder was in arrears to Fairview. Fairview refused to provide the builder materials on credit. The landowner promised to pay the past debt and future charges if Fairview would continue to supply the builder. The court found the owner's benefit of being able to finish his buildings was sufficient consideration to remove the oral promise from the statute of frauds. *See also Wells & Morris v. Brown*, 67 Wash. 351, 121 P. 828 (1912) (relinquishment of right to file lien sufficient consideration); *Dybdahl v. Continental Lumber Co.*, 133 Wash. 81, 233 P. 10 (1925); *McKay v. Northern Bank & Trust Co.*, *supra* (bank, as a significant creditor, convinced another creditor not to repossess valuable property in debtor's hands); *Davies v. Carey*, 72 Wash. 537, 130 P. 1137 (1913) (promisor benefited from keeping debtor's logging operation going); *Hall v. Anton Indus., Inc.*, 10 Wn. App. 106, 516 P.2d 1070 (1973) (corporation X agreed to pay past due salary owed by corporation Y in order to get services of valued employee); *South Sound Nat'l Bank v. Meek*, *supra*.

In this case, Hite was threatening to leave both the fabrication site and the construction site. The trial court found M–K agreed to assure the debt because it would benefit from Hite's continued crane services. M–K had an interest in seeing the contract was completed on schedule. This is sufficient benefit to make the agreement original and take the promise out of the statute of frauds. The trial court did not err in awarding judgment against M–K.

In the alternative, the trial court found M–K was estopped to deny the existence and validity of its promise to pay United's debt. In view of our holding above, we need not address the use of estoppel to avoid the statute of frauds.

M–K next contends there is no evidence to support the conclusion of law Inland tolerated or could not effectively control the agreement between M–K, Hite, and United. We disagree.

Finding of fact 6.1 supports the conclusion Inland tolerated the arrangement. This finding in turn is supported by

the testimony that Inland agreed to allow Hite to bill M–K through Inland for work done for United. The fact Inland could not control the agreement is supported by the findings these entities were separate corporations and the agreement was between United and M–K, not Inland.

The third issue is whether there was substantial evidence to support finding of fact 6.1, which provides in part:

> To assure satisfactory progress towards completion of its contract with Deaconess, to avoid problems in finding necessary alternate crane services at The Project site, to assure the continued provision of crane services at the United yard, to avoid the problems in obtaining new crane services at the United yard in light of the past payment problems of United, all to the benefit of Morrison–Knudsen . . .

M–K argues there is no evidence to support this finding and that it is pure conjecture. Although there is no direct testimony M–K promised to pay to avoid delay, there is evidence. On three or four prior occasions, M–K agreed to pay Hite when Hite threatened to leave the United job. If alternative crane services were readily available, M–K did not need to pay United's obligations. M–K removed the panels from United's control when it appeared the IRS would lock up the United yard. This suggests M–K was concerned with timely completion of the project. M–K argues it had its contract remedies against United and Inland for nonperformance, but these remedies take time and do not get a hospital built on schedule. There is no evidence alternative crane services were unavailable. However, in view of United's payment history, it is reasonable to assume alternative crane services would have been difficult to obtain. Thus, the challenged finding is supported by substantial evidence.

On cross appeal, Hite argues the trial court erred in finding Hite did not have a valid lien on the 29 panels stored in its yard. Hite claimed the lien under RCW 60.08, the chattel lien statute. The notice of lien was filed October 3, 1980.

RCW 60.08.010 provides:

> Every person, firm or corporation who shall have performed labor or furnished material in the construction or repair of any chattel at the request of its owner, shall have a lien upon such chattel for such labor performed or material furnished, notwithstanding the fact that such chattel be surrendered to the owner thereof: *Provided, however,* That no such lien shall continue, after the delivery of such chattel to its owner, as against the rights of third persons who, prior to the filing of the lien notice as hereinafter provided for, may have acquired the title to such chattel in good faith, for value and without actual notice of the lien.

Under former RCW 60.08.020 (Laws of 1917, ch. 68, § 2, p. 229), notice of lien had to be filed within 60 days after delivery of the chattel to its owner.[1]

The trial court found title to the panels had passed to M–K before the lien was filed and any lien had to be filed within 60 days of May 30. The court concluded Hite did not have a valid lien.

Hite strenuously argues the United/Morrison–Knudsen contract was not divisible and therefore title to the panels would not pass until final payment, sometime in 1981.

■ Title does not ipso facto pass when the contract is completed, although this date may be a factor.

> Where a contract is made for the manufacture of an article not existing in specie at the time of the making of the contract, the general rule is that no title vests in the purchaser during the progress of the work, nor until the chattel is finished and delivered, or, at least, is ready for delivery, or by some act is appropriated to the buyer.

*Sumner K. Prescott Co. v. Franklin Tool Works,* 117 Wash. 283, 287, 201 P. 308 (1921). Here, M–K removed the finished panels from the United yard and took possession of them in July 1980. Apparently, this was with the consent of United. According to *Prescott,* title passed to M–K at this delivery or appropriation. *See also* RCW 62A.2–401(2); *Hecomovich v. Nielsen,* 10 Wn. App. 563, 518 P.2d 1081

---

[1]The current RCW 60.08.020 provides notice of lien must be filed within 90 days.

(1974). Since title passed well before Hite filed the notice of its lien, the trial court correctly found Hite did not have a valid lien.

The judgment of the trial court is affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Review denied by Supreme Court May 25, 1984.