[No. 10050.  Department Two.  January 9, 1912.]

HEWITT LEA LUMBER COMPANY, *Respondent*, v.
F. F. SANDELL *et al.*, *Appellants.*[1]

MECHANICS' LIENS—NOTICE TO OWNER—DUPLICATE STATEMENTS— SUBSEQUENT MORTGAGES—PRIORITY. Under Rem. & Bal. Code, § 1133, requiring duplicate statements to be furnished to the owner at the time material is delivered, notice must be given to the one who was known to hold the legal title to the lots, of lumber delivered to one in possession under a lease with an option to buy, notwithstanding that subsequently the owner gave a deed to the lessee and took back a mortgage, and that Rem. & Bal. Code, § 1132, makes a mechanics' lien superior to mortgages subsequent to the commencement of the furnishing of the materials.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 25, 1911, upon findings

[1]Reported in 119 Pac. 848.

in favor of the plaintiff, in an action to foreclose a mechanics' lien.   Reversed.

*Peters & Powell*, for appellants.

*Alexander & Bundy*, for respondent.

CHADWICK, J.—On April 7, 1910, appellants Sandell and one Holden executed a contract covering certain lots in the city of Seattle.   The terms of the contract material to our present inquiry are as follows:

"I have this day leased to D. N. Holden for a term of five years from this date the northeast corner of Park Ave. and Navy Yard Ave., technically described as the east twenty feet of lots seventeen block sixteen, East Seattle, King County, Washington, rent to be paid every six months; said rental is twenty-five dollars per year from date, and I further agree to sell to said D. N. Holden, at any time within sixty days from date for the sum of three thousand dollars the east one-half of lots sixteen and seventeen and allow all money paid for the above lease to apply on purchase price of said one-half of lots sixteen and seventeen, twelve dollars and fifty cents of which I have this day received."

Holden went into possession and began the erection of a building.   Appellant F. F. Sandell protested this act in writing.   On April 29 the parties came together, and it was agreed that Holden would provide for the payment to appellants of a certain insurance premium, then in process of collection, in which event a deed was to be executed and a mortgage given for the balance due.   This occurred about April 30.   On May 31, Holden paid $800, and appellants executed a deed, taking a mortgage to cover the balance of the purchase price, which was made payable in one, two, and three years.   On April 30, respondent, the Hewitt Lea Lumber Company, began to furnish material for the building which Holden was erecting, and continued to do so from time to time up to May 21.   It is conceded by respondent that it knew, at the time it furnished the material to Holden,

that he had not obtained a deed for the property, and that Holden had only a contract for the purchase thereof; but it contends that, when appellants saw fit to change the form of their security, releasing the contract and taking a mortgage, they must depend entirely upon the mortgage, basing its contention upon Rem. & Bal. Code, § 1132, wherein it is provided that the liens created under the mechanics' lien statute are preferred to any lien, mortgage, or other incumbrance which may attach subsequently to the time of the commencement of the performance of the labor or the furnishing of materials for which a right of lien is given. While it is conceded that appellants had notice of the nature of Holden's title, we will nevertheless take the liberty of quoting a part of the testimony of the sales agent of respondent, in order to make our conclusion plainer than it otherwise might be. It follows:

"Q. Do you know, Mr. Payton, who the reputed owner of that property was on or about April 30, 1910? A. Well, it was understood that the deed was in Mr. Sandell's name, but Mr. Holden had a contract on it to buy it. Q. Did you have any conversation with Mr. Holden at the time you sold the first bill of lumber, in regard to who owned this property, in regard to the title of the property? A. Yes, sir. Q. What did Mr. Holden state? A. He showed me a contract that he had, and said that he would take it up at a certain time, and he told me he was going to when he got this insurance money."

We are of the opinion that the amendment to the lien law, Laws 1909, page 71, § 1, Rem. & Bal. Code, § 1133, is decisive of this case. The law is that a notice shall be given to the owner or reputed owner (in this case the owner was known), by delivering or mailing to him a duplicate statement of the materials furnished, and that no materialman's lien shall be "filed or enforced" unless the provisions of the law be complied with. No notice was given in this case. The law being in terms mandatory, we have given it literal construction. In *Finlay v. Tagholm*, 60 Wash. 539, 111

Pac. 782, we said that the purpose of the law was not so much to insure a right of lien, as to protect property owners against dishonest contractors. We were asked to give the law a liberal construction in *Finlay v. Tagholm*, 62 Wash. 341, 113 Pac. 1083, but met the contention squarely, saying that, "there is no primary obligation on the respondents. In order for the appellant to get the lien of the statute, it must comply with its terms. . . . The legislature has made no exception for cases where the owners of the property have knowledge that the material is being furnished." In *Heim v. Elliott*, ante p. 361, 119 Pac. 826, our previous interpretations of the statute are reaffirmed.

We have sought by reference to equitable principles to find some way in which respondent can recover the amount of its bill, but having failed to comply with the statute, it has no lien and hence no standing of which equity can take notice. The words of the statute that, unless duplicate statements be sent to the owner, no lien shall be filed or enforced, marks the bounds of our rights to interfere. Having no right to file a lien, it does not follow that, because appellants changed the form of their security, life and validity can be given to that which the statute has said shall be as nothing. The legislative policy is clearly expressed in the statute, and to construe it to meet the equities of the present case would be to emasculate the law and to make the right to file and enforce liens dependent upon the conscience of the chancellor, rather than upon the written expressions of the legislative will.

Judgment reversed, with instructions to enter a judgment in favor of the appellant.

Morris, Ellis, and Crow, JJ., concur.