[No. 23565.    Department Two.    April 26, 1932.]

LAWRENCE VOELKER *et al., Respondents,* v. IRA
CLEVELAND *et al., Appellants.*[1]

*D. V. Morthland,* for appellants.
*Bonsted & Nichoson,* for respondents.

MAIN, J.—This action was based upon an oral con-
tract.  The cause was tried to the court and a jury,
and resulted in a verdict in favor of the plaintiffs in

[1]Reported in 10 P. (2d) 561.

the sum of $4,730.40. Motion for new trial being made and overruled, judgment was entered upon the verdict, from which the defendants appeal.

The facts essential to be stated are these: Lawrence Voelker and John Voelker, the respondents, were engaged in business in the city of Yakima, and Lawrence Voelker will be referred to as though he were the only respondent. Ira Cleveland, one of the appellants, who will be referred to as though he were the only party on that side of the controversy, was engaged in business in the same city. Fred H. Jackson and A. F. Ridge were lessees of a large fruit ranch in Yakima county, known as the Moxee Heights ranch.

March 15, 1929, Jackson and Ridge entered into a marketing contract with the appellant. By this contract, the appellant agreed to make all necessary advances for the growing, harvesting and packing of the fruit crops on the ranch for the year 1929. For all advances made, he was to receive eight per cent interest per annum. The appellant was to do the marketing of the crop, and was to receive ten cents per box for the apples and pears marketed by him, and five cents per box for peaches and prunes. In case the pears or prunes were sold in bulk, his compensation was to be five dollars per ton, and for cull apples and pears, one dollar per ton.

Under this contract, from the latter part of March and continuing until September, the appellant advanced about one thousand dollars per week for the purpose of paying the expense of the operations upon the ranch. After the crop was produced, he marketed the same.

Sometime in the spring of 1929, the respondent went to the appellant's office, and the subject of selling spray material was discussed between them. The respond-

ent handled the Sherwin Williams brand of spray, and the appellant suggested to him that he would ascertain whether that brand was satisfactory. Later, the respondent went to the appellant's office, and was informed that the Sherwin Williams spray was satisfactory. The respondent then made a price of 13 cents per pound cash and 13½ cents payable November 1, 1929. If time was allowed, trade acceptances would be required.

A few days later, the respondent went back at the appellant's suggestion, and the latter stated that Jackson and Ridge should be charged 14 cents per pound for the spray on time, which would leave a half cent per pound for the appellant. An order slip was written out, dated April 16, 1929, for 20,000 pounds of spray at 14 cents per pound, to be evidenced by trade acceptances due November 1, 1929, and was signed by the respondent. It was left at the appellant's office, and was subsequently signed by Jackson and Ridge.

The 20,000 pounds mentioned were delivered to Jackson and Ridge, and, after the delivery had been completed, the respondent again went to the appellant's office, and the amount of the deliveries was checked over, and a trade acceptance, dated May 9, 1929, and payable November 1 of that year, signed by Jackson and Ridge, was delivered to him. Subsequently, additional spray material was furnished Jackson and Ridge, a portion of which was out of warehouses not operated by the respondent, but was upon his credit.

After the spray had all been delivered, and on August 30, respondent went to the ranch to ascertain the amount of the delivery subsequent to the first 20,000 pounds, he not being in possession of the copy of the delivery slips for the material that was sent out of

warehouses not operated by him. The amount was fig-
ured up with Jackson and Ridge, and on this day a
second trade acceptance was given, payable to the re-
spondent and signed by Jackson and Ridge.

The respondent testified that, subsequent to this
time, he informed the appellant of the additional spray
that had been delivered, and that the latter, while ex-
pressing some surprise at the amount of spray that
had been used upon the ranch, did not repudiate lia-
bility therefor at that time.

When the trade acceptances became due, they were
not paid, and the respondent, on two occasions, by tele-
phone, called this fact to the appellant's attention, and
the latter asked for further time, but did not, up to
this time, deny his personal liability. Sometime dur-
ing the latter part of December, 1929, when the matter
was again called to the attention of the appellant, he
denied liability, and later the present action was
brought.

The facts stated are largely those which are sup-
ported by the testimony of the respondent. The testi-
mony of the appellant and his witnesses upon the mat-
ters most material was in conflict with that of the re-
spondent. A further reference will be made to the tes-
timony in connection with the particular points con-
sidered to which it may be relative.

It is first contended that the trial court erred
in admitting in evidence, over his objection, the mar-
keting contract between him and Jackson and Ridge.
The respondent's case depended upon whether the ap-
pellant made a direct promise to pay for the spray that
was used upon the ranch during the year 1929.
Whether the promise was a direct and independent
one on the part of the appellant, or collateral to pay
the debt of Jackson and Ridge, if any promise was

42

made, presented a material inquiry. The extent of the appellant's interest in the operations of Jackson and Ridge was a matter to be taken into consideration in determining whether he had made a direct promise to pay for the spray, and the contract was material evidence on this question. *Burns v. Bradford-Kennedy Lumber Co.*, 61 Wash. 276, 112 Pac. 359; *Davies v. Carey*, 72 Wash. 537, 130 Pac. 1137.

The trial court, in an instruction, limited the purpose for which the jury should consider the contract to that of determining "whether or not the defendant, Ira Cleveland [appellant], was an original promisor, as claimed by the plaintiffs [respondents]." There was no exception to this instruction or to any of the other instructions. The contract was properly received in evidence for the purpose to which the court limited it, and there was no error in this regard.

It is next contended that the court erred in refusing to grant a new trial because of the insufficiency of the evidence to sustain the verdict. Where there is substantial testimony to sustain a verdict and a motion for new trial has been overruled by the trial court, this court will not disturb the verdict unless it appears that the trial court's refusal to grant a new trial was an abuse of discretion. *Shamek v. Metropolitan Building Co.*, 127 Wash. 336, 220 Pac. 816; *Christianson v. Shepherd*, 143 Wash. 537, 255 Pac. 942.

The appellant recognizes this rule, but says that the present case is not controlled by it. It will be admitted that, where the verdict of a jury is based upon the unsupported testimony of the prevailing party and the trial court overrules a motion for new trial, and the testimony of the prevailing party is inherently improbable, in conflict with the physical facts or disputed by documentary evidence, this court will

inquire into whether there has been an abuse of discretion on the part of the trial court in refusing a new trial.

In the present case, the testimony of the respondent was not inherently improbable. He was dealing in orchard spray, knew that the financial rating of Jackson and Ridge was not good, and knew that the appellant was entirely responsible. At the time the contract was made, he did not know of the written agreement between the appellant and Jackson and Ridge, but he did know that the appellant was "financing and furnishing everything necessary for the ranch." The agreement between the parties, as testified to by the respondent, was as follows:

"Q. Tell the next conversation. A. I went to Mr. Cleveland's office a few days later and he said he talked to Jackson & Ridge to see whether Sherwin Williams lead was all right or not, and it was. I made him a price of 13 cents cash and 13½ cents on time. Where it was on time it was till November first. . . . Mr. Cleveland said for me to come back later, and I went back later to his office, and he then told me 'Why can't we charge Jackson & Ridge 14 cents, which would leave a half cent for me?' I told Mr. Cleveland that I wasn't taking any chances on Jackson & Ridge. He said 'You take their trade acceptance and you come to me for the money on that lead; when that bill comes due I will pay it.' I don't remember just the exact words said there, but Mr. Cleveland told me to write out a slip stating the price and the time and the amount of spray they wanted to use, and I left that there with Mr. Cleveland."

We see nothing in the testimony of the respondent that was inherently improbable, in view of the fact, as stated, that he knew the financial standing of Jackson and Ridge was not good, and that the appellant was financially responsible. It would be reasonable to de-

sire to sell the material to a responsible party rather than to one who was not.

If there are any physical facts or documentary evidence which dispute the testimony of the respondent, they will be found in the order slip and the trade acceptances above mentioned. These were all signed by Jackson and Ridge, and not by the appellant. The purpose of having Jackson and Ridge sign the order slip and the trade acceptances, as testified to by the respondent, was to protect the appellant in his one-half cent per pound and keep this from coming to the knowledge of Jackson and Ridge. The trade acceptances, while evidence of a liability on the part of Jackson and Ridge, are not inconsistent with an independent promise or liability on the part of the appellant. The fact that Jackson and Ridge may have been liable for the debt does not dispute that the appellant may also be liable.

We have not overlooked the fact that the verdict is supported by the testimony of the respondent alone, and that testimony upon material matters is in direct conflict with the testimony given by the appellant and two of his employees at the time the transaction is claimed to have been made. That testimony, however, together with the order slip and the trade acceptances, were matters for the jury to consider in determining whether they would accept the testimony of the respondent as correctly presenting the transaction. The trial court, under the facts and circumstances of this case, did not abuse its discretion in refusing a new trial.

This case is entirely different from that of *Swafford v. Levin*, 117 Wash. 681, 202 Pac. 254, where it was held that the verdict of a jury, based upon the unsupported testimony of the prevailing party, which was incon-

sistent with itself and disproved by physical facts relating to the only issue in the case, would not be permitted to stand because there was a failure of proof, and in that case the judgment was reversed and the action ordered dismissed. We see little analogy between the facts in that case and the one now before us.

█ Finally, it is contended that the verdict of the jury was excessive. In this connection, it is said that the appellant's liability could only be for the first 20,-000 pounds, and that he was not obligated to pay for any spray over and above that amount, which was delivered subsequent to the time the first trade acceptance was given. As to the amount of spray material that was to be delivered under the oral contract with the appellant, the respondent testified:

"Q. In regard to that slip, will you state whether or not anything was said about the quantity of spray that would be used or required on the place that year? A. The estimated tonnage was twenty thousand pounds, and furnish all spray necessary to operate the ranches."

That testimony was given upon direct examination, and, upon cross-examination upon the same subject, he further testified:

"Q. What was said about the quantity of material he was going to use? A. Well, he was to find that out from Jackson & Ridge, to find how much they needed out there. Q. Who did he say Jackson & Ridge were? A. They were the men that were running the orchard."

As above stated, the respondent testified that he told the appellant in the summer of 1929 that Jackson & Ridge were getting more spray, and, when the spraying season was over, the respondent told the amount that had been used. The appellant expressed surprise that the spray bill ran as high as it did. Later, when

46

the request for payment was first made, the respondent did not question the amount of spray that had been delivered or his liability therefor.

Of course, all of this is disputed by the appellant's testimony, but we are here dealing with a question of fact that was tried to a jury. Under the conflicting testimony, the jury had a right to find that the appellant had made an independent promise to pay for all the spray material that was used upon the Moxee Heights orchard during the season of 1929.

The judgment will be affirmed.

TOLMAN, C. J., BEALS, HOLCOMB, and MILLARD, JJ., concur.