[No. 28026. Department One. July 22, 1940.]

WHITE'S TRUCKING COMPANY, *Appellant*, v. MAX J. KUNEY, *Respondent*.[1]

[1]Reported in 104 P. (2d) 587.

*Roy A. Redfield*, for appellant.

*Tustin & Chandler* and *Clyde H. Belknap*, for respondent.

MILLARD, J. — Plaintiff, a domestic corporation, brought this action to recover against defendant for alleged breach of a contract respecting the hire of trucks to move earth in connection with defendant's contract with the United States for building an earth-work dam at Island Park, Idaho. The original complaint was for recovery of loss of profits on the time that plaintiff's trucks would have been employed if they had hauled all the necessary earth for the dam. On the date the trial of the action commenced, plaintiff served an amended complaint, alleging that its contract with defendant obligated defendant to furnish four trucks and plaintiff nine; that four of plaintiff's trucks were to have parity in hauling with defendant's four trucks, and all remaining hauling was to be done by plaintiff's other five trucks. A further item of recovery sought was the reasonable cost of a tool and repair shop built by plaintiff on the site of the work at Island Park, Idaho.

Defendant answered, admitting the agreement to pay the reasonable value of the repair shop but denying all other material allegations. The cause was tried to a jury, which found that plaintiff was entitled to recovery of the amount tendered by defendant in payment for the repair shop in question. From the judgment entered on the verdict, its motion for new trial being overruled, plaintiff appealed.

■■ Counsel for appellant contends that the motion for a new trial should have been granted on the ground of insufficiency of the evidence. Counsel, mindful of the rule that it is not an abuse of discretion to refuse a new trial for insufficiency of the evidence

where the testimony was in direct conflict and made questions for the jury, seeks to invoke the exception to the rule that, where the verdict of a jury is based upon the unsupported testimony of the prevailing party, and the trial court overrules a motion for new trial, and the testimony of the prevailing party is inherently improbable, in conflict with the physical facts, or disputed by documentary evidence, the appellate court will inquire into whether there has been an abuse of discretion on the part of the trial court in refusing a new trial. *Voelker v. Cleveland,* 168 Wash. 38, 10 P. (2d) 561.

The qualification of the rule is not applicable in the case at bar. No exception was taken by appellant to any instruction given to the jury. One of the instructions, which is in harmony with appellant's theory as disclosed by its complaint, charged the jury that it was necessary for appellant to prove by the preponderance of the evidence (1) that respondent agreed to hire a definite number of appellant's trucks to work on the Island Park job; (2) that hauling for the construction of the dam and dike throughout the entire project should be limited to four of respondent's trucks and nine of appellant's trucks; and (3) that respondent's four trucks should have equal rights as to order of haul on the job with four of appellant's trucks and that the remaining haul was to be done by appellant's remaining trucks.

It is clear from the facts, summarized as follows, that the jury was warranted in finding that appellant failed to sustain the burden of proof, or, viewed in the light most favorable to appellant, that the evidence was (appellant so admits) in sharp conflict; therefore, as there is some support in the evidence for the verdict, the trial court did not err in denying the motion for a new trial:

Respondent entered into a contract in 1935 with the United States to construct and complete during 1936 the Island Park, Idaho, dam, which was to be constructed of earth protected by a layer of rock. Difficulties in excavation prevented completion of the work in 1936. It was not until the year 1938 that the dam could be constructed. The hauling prior to 1938 was limited principally to construction of dikes or shoulders which were practically completed in 1936. Respondent owned ten trucks and four shovels, but did not have enough of his own trucks to do the hauling required by the contract. He entered into some kind of an agreement with appellant to supply trucks, accompanied by their drivers, to assist in the hauling. The contract of hiring was oral, but there were certain letters referring to the work to be performed. There is no question as to the definiteness of the contract, as disclosed by the testimony of witnesses and the correspondence, respecting the fact that the trucks of appellants were to work for a stipulated price per hour. The oral agreement and letters are not definite as to the number of trucks needed, with the exception that six trucks were needed to start the work. What amount of earth was to be hauled by appellant is not shown. It was to send six trucks to commence the work, and more trucks were to be placed on the job later if there were any necessity therefor. It is admitted that respondent should also have his trucks on the job. The evidence is in dispute as to whether respondent's trucks were to have priority and appellant was to haul what respondent could not transport. From the beginning, respondent, who used ten trucks on the job, gave his own trucks priority. While appellant complained during the progress of the work that it was not permitted to do the amount of hauling contemplated by its arrangement with respondent, it does

not appear that the complaint was bottomed upon the claim of a breach of the arrangement alleged in the amended complaint; that is, respondent was to furnish four trucks and appellant nine, four of appellant's trucks to have parity in hauling with respondent's four trucks, and the remaining hauling to be done by appellant's other five trucks. When the hauling operations ceased in 1936, appellant was paid in full, which payment was accepted without any protest for the hauling performed by it. Appellant arranged for work elsewhere for its trucks and placed them on another job. No hauling was done in 1937. The evidence is in conflict whether, when there was a resumption of operations in 1938 at Island Park, appellant desired to accept a contract for use of its trucks.

O. A. White, appellant's vice-president and secretary-treasurer, in a discovery deposition taken subsequent to commencement of this action, testified (contrary to the theory of appellant's amended complaint) that the agreement as to division of the work was on the basis, ". . . we would work them both 50-50 . . . the agreement was whatever was fair." This witness endeavored to explain, when on the stand, his deposition, but it was for the jury to accept or reject the explanation and to determine whether any such arrangement as alleged in the amended complaint was made.

Appellant's letter written May 20, 1936, to respondent, reads, so far as material, as follows:

"We should like very much to know if you are still planning on beginning hauling operations June 8th. We have three six-wheelers coming from Chicago to the job for June 8th and we can send three from here most any time."

There is no statement in the letter or anything from which the jury would have been justified in inferring

there was an arrangement such as is now claimed by appellant.

Respondent wrote to appellant as follows May 23, 1936:

"The snow is all off, the ground is entirely dry and it is summer at Island Park now. We will be ready to go with two shovels and eight 12 CY trucks about June 10th. The rates agreed upon were $6.00 per hour for 12 CY trucks, $4.50 per hour for 8 CY trucks, with full sideboards and tail gates to deliver full capacity."

Instead of sustaining the position of appellant, it is indicative of the fact that no agreement had at any time been made for the employment of nine trucks, and there is no specified period of employment mentioned. May 24, 1936, appellant wrote as follows to respondent:

"In reply to your letter of May 23, 1936, wish to state that price mentioned in your letter is price agreed upon but we have only two 12 Cu. Yd. Trucks here that are ready to go to your job equipped with tail gates and have three that will be there from Chicago not later than June 15th. We are expecting them to arrive around the twelfth or before. These are full capacity 12 Cu. Yd. trucks equipped with tail gates.

"The eight yard trucks are not made for tail gates and also the three 12 Yard trucks I planned on leaving here on the job at Bonneville. These trucks will all carry capacity loads. If you can keep these three 12 yard trucks busy for the next sixty days, we will be glad to take them over to the job at Island Park. I think Columbia Construction Company can get along until the fifteenth of August without them.

"I heard from Meyers & Goulter at Clayton today and it seems that they won't be through with our trucks until the July 15th. So, to sum it all up, we can have five 12 yard trucks and one 8 yard with tail gates and rock scoops on the job by June 12. If you want these other three 12 yard trucks with rock scoops please let us know as soon as possible. We also have three 5 yard trucks if you need them."

It seems improbable that this letter would have been written if there had been a previous agreement between the parties as to nine trucks scheduled for operation under the 4-4-5 plan for which appellant contends. Some of appellant's trucks were not equipped as required by respondent. Appellant would be willing to supply three trucks if respondent would agree to keep them "busy for the next sixty days." The period the other trucks were to be employed is not disclosed by the letter. Appellant states that he can have six trucks on the job by June 12th and appellant would send three other trucks later if respondent wanted them. The only reasonable inference is that the three other trucks would be furnished if respondent would agree to keep those trucks busy sixty days.

Respondent's letter of May 25, 1936, reading in part as follows, to appellant, does not establish an agreement to employ a definite number of trucks other than to start the job:

"Your letter dated May 20th arrived after your letter dated May 24th. This will reply to both letters.

"My understanding is that three 6-wheelers are enroute direct from Chicago to Island Park due June 8th to 15th. You also have two more 6-wheelers at Bonneville and one 8 CY truck, all of which six trucks are equipped with tail gates and available. This fleet of six, together with our fleet of 2- 12 CY and 2-8CY trucks will START the dirt work on the dike, and take care of 2-shovels.

"However, shortly after the dirt fill gets underway we will start hauling rip rap and then take off our fleet which are better equipped for rock haul than yours will be, and at that time we will need your remaining three twelve yard trucks, but they should be equipped with tail gates on account of the fifty foot spread we should make on the dike and dam fills. I estimate that July 1st will be the date when the full fleet is needed, but will keep you advised. Before that we can discuss the matter of tail gates. . . .

"In order that this letter will further advise the job office we re-state the hourly rate as follows: For 8 CY full capacity trucks $4.50 and for 12 CY full capacity trucks $6.00 per operating hour, delays of 15 minutes or longer fully deducted from operating time. We handle your payrolls and give you any buying advantage we may have without commission or per centage above actual cost to us.

"It would be a good idea if you would have a few days before actual hauling starts in order to build your shop, storage room and other lay-outs. . . .

". . . We figure that when your fleet comes in, or just before, we will give the local employment office orders for about fifteen heavy duty truck drivers, 12 yarders, six-wheelers, Linn's etc. and when they fail to supply we can send out."

We find nothing in the foregoing letter disclosing an agreement to keep any trucks employed for a definite period of time and there is no reference to the 4-4-5 arrangement on which appellant bases its right to recovery. The letter is not out of harmony with respondent's position; that is, the job was respondent's and he agreed to give to appellant such employment as respondent might require in addition to the work that could be done by respondent's own trucks. We find no other correspondence respecting the employment of appellant written by the parties prior to commencement of the work in 1936.

Appellant claims that it wrote a letter June 18, 1937, to respondent, who insists that he never received the letter. Appellant testified that the carbon copy of the letter was destroyed by it, and the document exhibited to the court was kept for its files by mistake. The explanation of appellant of the absence of a carbon copy was that copy offered in evidence is a rough draft of a letter placed on the desk of appellant for approval; that, because of two typographical errors in the rough draft, the letter was corrected and mailed to respondent, and

the carbon copy of the letter, as rewritten, was sent to Ernest White, who was associated with O. A. White in appellant corporation. The letter does not sustain appellant's 4-4-5 theory. If it were relying on that arrangement, appellant did not express a willingness to go back if respondent would give appellant priority (first out) with its five twelve-yard trucks. The letter reads as follows:

"After returning home and hearing from Seminoe Dam, Stevens Pass and also after reviewing our agreement for the Island Park job, I am convinced that it was carried out as scheduled last year, yours would be far the best job for us.

"This proposition you put up to me the other day, would put me right down on the little end of the deal and I don't see how you could live up to your agreement and ask me to do this.

"I thought possibly you might get another job and have work for some of your other trucks elsewhere and if you could go ahead with this job as per our previous schedule it would certainly help us out. This of course would mean we furnish all the trucks except your two twelve yard and two eight cubic feet Mac's. We would be willing to go in there without any guarantee for the number of hours providing we knew we were going to do all the hauling that these four trucks of yours could not do, if you will give me the first out with my five, twelve yards."

Appellant wrote to respondent August 12, 1938, at which time the work on the dam was in full progress. This letter, which reads as follows, is conclusive that appellant did not at that time have any thought that he had an agreement with respondent under which the latter was required to use four, five, nine, or any definite number of trucks:

"We are finishing up at Ritzville soon and would like to hear from you regarding how many trucks you can use steady and just when you will be ready for them.

"Trusting that we may hear from you by return mail

632

and also that your requirements for trucks will be large, we are, . . . "

The other assignments of error are without substantial merit.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.

[1]Reported in 104 P. (2d) 579.